IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

ADRIAN MARTINEZ

Plaintiff,

v.

SEAN JENNEIAHN
S. SEDGWICK,
L. SMITH, and
PETER VORIS

Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Adrian Martinez, by and through his attorney, Raymond K. Bryant of the Civil Rights Litigation Group, PLLC, states and alleges as follows:

### INTRODUCTION

1.      This is a civil rights action seeking damages against Lafayette police officers for dog bite injuries suffered when the officers unjustifiably ordered a police K-9 to attack Plaintiff, as Plaintiff laid defenseless – prone, on the ground in a storage closet, wearing only underwear. The dog repeatedly chomped down on Plaintiff's arm for 15-20 seconds as it violently jerked and twisted Plaintiff's arm. The Defendant officers stood by and failed to intervene in the vicious attack, and instead congratulated one another with fist bumps and praise for the K-9.

2.      Plaintiff seeks compensation for the physical, dignitary, emotional, and economic injuries that he suffered, including temporary and permanent injuries from the dog bite, disability, scarring and deformation, emotional trauma, medical bills, lost employment, and punitive

sanctions to punish the officer for their flagrant disregard of Plaintiff's rights and safety.

## JURISDICTION AND VENUE

3.      This action arises under the Constitution and laws of the United States and 42 U.S.C. § 1983. Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

4.      Venue is proper in the District of Colorado because the incidents and resulting injuries to the Plaintiff giving rise to this action occurred in Boulder County, Colorado.

## PARTIES

5.      Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

6.      Plaintiff Adrian Martinez was at all times relevant to the claims set forth herein a resident of the State of Colorado.

7.      Defendant Sean Jenneiahn was, at all times relevant to the claims in this action, employed as a K-9 Police Handler of dog named "Kenzi" by the Lafayette Police Department, and acted under color of state law. His officer number is L22. He is identified in his individual capacity.

8.      Defendant S. Sedgwick was, at all times relevant to claims in this action, employed by the Lafayette Police Department and acted under color of state law. His officer number is 1505. He is identified in his individual capacity.

9.      Defendant L. Smith was, at all times relevant to the claims in this action, employed by the Lafayette Police Department and acted under color of state law. His officer number is 1607. He is identified in his individual capacity.

10.     Defendant Peter Voris was, at all times relevant to the claims in this action, employed by the Lafayette Police Department and acted under color of state law. His officer number is 0203. He is identified in his individual capacity.

## FACTUAL BACKGROUND

11.     On the night of February 17, 2018, Plaintiff Martinez was brutally assaulted by bail bondsmen who were looking for Plaintiff Martinez's girlfriend. Plaintiff Martinez required hospitalization after being shot with numerous rubber/bean-bag bullets and being repeatedly pistol-whipped in the head.

12.     The bail bondsmen were criminally charged and prosecuted for assault.

13.     The next day, on February 18, 2018, Plaintiff Martinez awoke to find himself in the hospital, still suffering from a concussion. He did not know where he was or how he had gotten there.

14.     In his confusion, Plaintiff Martinez disconnected himself from hospital machines/IV drip(s), and left the hospital, looking for his home.

15.     Plaintiff Martinez eventually found himself in a nearby apartment complex, tired, lost, and confused. He found a dark, quiet closet, with only one entrance/exit, where he fell unconscious.

16.     While Plaintiff Martinez was unconscious in the storage closet, a group of four to six police officers were told that Plaintiff had gone in, dressed in a hospital gown, and had not come out.

17.     Among those officers, the Defendant officers, including Jenneiahn, Voris, Sedgewick, and Smith, discussed together a plan to open the closet door and order their police K-9 attack.

18.     As the officers surrounded the closet door and waited for the apartment maintenance manager to unlock the door, the officers failed to knock, identify themselves as police, or otherwise announce their presence or intentions.

19.     The Defendant officers did not issue any reasonable commands, warnings or other opportunity for Plaintiff Martinez to exit the storage closet without force.

20.     As a result, Plaintiff remained unconscious, unaware that police or the police K-9 were there preparing to seize him, by violent means.

21.     Without providing any commands, warnings, or opportunity for Plaintiff to submit to the officers, Defendant Officers opened the door, observed that Plaintiff was laying on his stomach in his underwear – unarmed and unmoving – and Defendant Jenneiahn ordered his police K-9 to attack.

22.     The K-9 repeatedly chomped down on Plaintiff Martinez's left arm, while his handler repeatedly yelled "get him."

23.     Each of the Defendant officers watched from within arms-length and failed to intervene as the K-9 attacked and spent a prolonged period of time chomping and clamping on Plaintiff's arm, causing serious bodily injury to the unaware and surprised victim, and while Plaintiff yelled in agony.

24.     Thereafter, the officers congratulated one another with fist bumps and praise for the K-9, telling him "good boy."

25.     Although Plaintiff Martinez did not offer any resistance, threats, or otherwise attempt to flee during the police contact, the Defendant officers falsely asserted in police reports and charging documents that Plaintiff Martinez had resisted arrest and obstructed their investigation.

26.     The criminal charges asserted against Mr. Martinez were eventually dismissed.

27.     As a result of the K-9 attack, Plaintiff suffered multiple puncture wounds and a large laceration on his left arm, which could not be completely closed, and which forced him to undergo more serious medical treatment. Plaintiff has scarring from the attack and continues to experience pain and neurological injury in his left arm, hand, and wrist.

28.     Plaintiff had been trained as a mechanic and can no longer perform work in the

4

industry with the injury and resulting disability(ies).

**FIRST CLAIM FOR RELIEF**
*42 U.S.C. § 1983 Fourth Amendment Violation – Excessive Force*
**(Against Defendant Jenneiahn)**

29.     Plaintiff fully incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding Paragraphs of the Complaint.

30.     Defendant Jenneiahn intentionally and knowingly applied unnecessary, unreasonable, and excessive force to Plaintiff Martinez by ordering his K-9 Unit to attack and seize Plaintiff, and by failing to timely intervene to stop the dog from chomping its teeth into Plaintiff, repeatedly, and/or violently jerking Plaintiff's bleeding arm.

31.     Defendant Jenneiahn did not identify himself, nor did any other officer identify himself or herself, as a police officer prior to ordering the dog to attack, nor did any available officer issue audible commands or warnings in the minutes before resorting to force. As a result, Plaintiff Martinez did not know, and could not have known, that police officers were outside, that he was expected to come out, or that that officers were contemplating the use of force before it was used.

32.     When Defendant Jenneiahn released the K-9 Unit, Plaintiff Martinez was not actively fleeing police or resisting arrest, nor was Plaintiff Martinez in a position to flee: numerous police officers were guarding the only entrance/exit at his location.

33.     None of the Defendant Officers had any objective information suggesting that Plaintiff Martinez was an imminent threat; in fact, after the door was opened but before releasing the dog, the Defendant officers readily observed Plaintiff wearing only his underwear in a non-threatening prone position.

34.     Even if the officers were justified in using some level of force to detain/arrest

5

Plaintiff Martinez, the force used was wholly unnecessary and reached a quantum above and beyond that necessary to effectuate a lawful detention/arrest under the circumstances.

35.     The actions described herein of Defendant Jenneiahn, while acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to freedom from unreasonable seizure as guaranteed by the Fourth Amendment, made actionable pursuant to 42 U.S.C. 1983, and was the motivating and proximate cause of Plaintiff's injuries, including physical, emotional, economic, and dignitary harms.

## SECOND CLAIM FOR RELIEF
### *42 U.S.C. § 1983 Fourth Amendment Violation – Conspiracy to Commit Excessive Force and/or Failure to Intervene to Protect against Excessive Force*
**(Against All Defendants, Jenneiah, Sedgwick, Smith, and Voris)**

36.     Plaintiff fully incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding Paragraphs of the Complaint.

37.     Prior to making contact with Plaintiff Martinez, each of the officers had been told that Martinez had stumbled into the confined space of the apartment complex storage closet, in a hospital gown and underwear, and closed the door – where there was obviously only one entry/exit.

38.     Without having any objective information suggesting Plaintiff was an imminent threat, or could not otherwise be apprehended without violence, each of the Defendant officers, including Jenneiahn, Voris, Sedgewick, and Smith, discussed together a plan to open the closet door and automatically and immediately order their police K-9 attack.

39.     As all officers gathered around the closet door, all Defendants were within arm's reach of the K-9 Unit and only a few feet away from Plaintiff Martinez.

40.     After opening the closet door, and before Defendant Jenneiahn's release of the K-9 Unit, the Defendant Officers had a clear view of Plaintiff and personally observed Plaintiff

Martinez lying motionless on the floor of a storage closet, wearing only his underwear, with no information suggesting he could be a threat.

41.    Despite personally observing Plaintiff Martinez exhibiting a docile, non-threatening demeanor, Defendant Jenneiah ordered the K-9 to attack.

42.    During the process of attack, Defendant's Jenneiah, Voris, Sedwick, and Smith all watched the attack, but did not intervene to prevent, stop, or ameliorate the force from the K-9 Unit.

43.    While standing outside of the storage closet next to the K-9, Defendants Voris, Sedgwick, and Smith had several minutes during which they could have prevented the K-9 attack on Plaintiff Martinez and 15-20 seconds during which they could have stopped the K-9 attack from continuing.

44.    However, none of the officers stepped in to stop the unnecessary and excessive attack by the police K-9 until the injuries had been inflicted.

45.    The actions described herein of Defendants Voris, Sedgwick, and Smith, while acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to freedom from unreasonable seizure as guaranteed by the Fourth Amendment, made actionable pursuant to 42 U.S.C. 1983, and was the motivating and proximate cause of Plaintiff's injuries, including physical, emotional, economic, and dignitary harms.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment in his favor and against all Defendants for compensatory damages, as referenced above, for punitive damages, for interest as allowed by law, for costs, expert witness fees, and reasonable attorney fees as allowed

7

by statute or as otherwise allowed by law, and for any other and further relief that this Court shall

deem just and proper.

**PLAINTIFF DEMANDS TRIAL TO
A JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 20th day of November, 2019.

Civil Rights Litigation Group, PLLC

*s/___Raymond K. Bryant_____*
Raymond K. Bryant
1543 Champa St., Suite 400
Denver, CO 80202
P:  720-515-6165
F:  720-465-1975
Raymond@rightslitigation.com

8